UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Francis H. Laumeyer,                                     Civil No. 04-2678 (DWF/RLE)

           Plaintiff,

v.                                          **MEMORANDUM OPINION AND ORDER**

Melrose Dairy Proteins, LLC,

           Defendant.

___

Adam A. Gillette, Esq., and Paul J. Lukas, Esq., Nichols Kaster & Anderson, PLLP, counsel for Plaintiff.

Ellen G. Sampson, Esq., and Tracey Holmes Donesky, Esq., Leonard Street and Deinard - Minneapolis, counsel for Defendant.

___

## Introduction

The above-entitled matter came before the undersigned United States District Judge on July 29, 2005, pursuant to a Motion for Summary Judgment brought by Defendant Melrose Dairy Proteins, LLC, ("MDP"). The action arises out of Plaintiff Francis Laumeyer's claims of age and disability discrimination. For the reasons set forth below, MDP's Motion for Summary Judgment is granted in part and denied in part.

## Background

MDP is a cheese manufacturing plant in Melrose, Minnesota. The plant is a joint venture between Land O' Lakes, Inc., and Dairy Farmers of America and was purchased from Kraft Foods on March 19, 2001. Laumeyer began working at the Kraft Foods plant as a production worker in 1971.

Laumeyer later became a maintenance technician, a position that allowed for greater pay than the production worker job, and continued working in that position for MDP when it purchased the plant in 2001.  Laumeyer was 55 years old when MDP purchased the plant.

On July 20, 2001, a Maintenance Technician was fatally electrocuted at the MDP plant.  As a result, MDP determined that it needed to improve its coverage in the plant with licensed electricians.  MDP previously had difficulty attracting licensed electricians because its pay structure in the Maintenance Department made little differentiation between the skills of its maintenance employees.  In response to these needs, three MDP employees–Stuart Giffin, Plant Manager; Mike Nelson, Maintenance and Engineering Manager; and Susan Gard, Human Resources Manager–developed a pay-for skill program to increase the number of licensed electricians on staff.  After surveying applicable industry rates, Nelson and Gard initially set new pay rates for licensed maintenance employees at MDP.

Two MDP employees tested for and obtained their journeyman electrician licenses as a result of this directive.  In addition, MDP hired two external candidates–one who possessed a journeyman electrician's license, and another who was licensed as a maintenance electrician.

As part of this directive, Nelson assessed the skill level needed by maintenance technicians to operate the facility.  Employees were allowed to advance on a newly created pay rate classification program by taking and passing hands-on skills tests.  MDP also offered some training to the maintenance employees to further the pay-for-skill directive.  In Fall 2001, MDP organized a fourteen-week electrical training course with the Minnesota Electrical Association.  Nelson selected two maintenance employees from each shift to attend the first training.  Laumeyer asserts that he asked Nelson if he (Laumeyer) could attend the classes, but Nelson told Laumeyer that he wanted the

younger people to attend the classes first.  (Affidavit of Adam A. Gillette in Opposition to Motion for Summary Judgment ("Gillette Aff."), Ex. 7 (Deposition of Francis H. Laumeyer ("Laumeyer Dep.")) at 81.)  Nelson, on the other hand, claims that Laumeyer was never denied any training opportunities that were offered to the maintenance department.  (Gillette Aff., Ex. 2 (Deposition of Michael Nelson ("Nelson Dep.")) at 45.)  Laumeyer asserts that the course was never offered to him at a later date (Laumeyer Dep. at 82).  Laumeyer asserts that unlike other employees, he was never asked to attend a second round of training that was held at the plant.  (Laumeyer Dep. at 86-7.)  MDP, however, contends that Allen Notch, the First Shift Group Leader at MDP, encouraged Laumeyer to attend and posted a sign-up sheet in the maintenance shop.  (Gillette Aff., Ex. 4 (Deposition of Allen Notch ("Notch Dep.")) at 45, 72-3.)  Notch asserts that Laumeyer said that he would "watch the shop so the rest of the guys could go."  (*Id.* at 72.)  Regardless of this dispute, Laumeyer never attended the training.  Laumeyer asserts that because he did not attend the training, younger employees were able to get licenses while he was running the shift at MDP.  (Laumeyer Dep. at 78-9.)

In March 2003, as a result of MDP's significant financial losses after it took over the plant, MDP's leadership team prepared a study to assess scenarios for restructuring the plant.  The leadership team, which consisted of Giffin, Nelson, Gard, Hank Braegelmann (Plant Superintendent), and Jeff Balousek (Quality Manager), determined that it would need to eliminate positions in various departments within the plant.  Nelson evaluated the employees in the Maintenance department to determine what skills were needed for each shift.  As a result of this evaluation, MDP decided to eliminate two positions from the Maintenance department, including Laumeyer's position.  MDP asserts that Laumeyer was the appropriate person to remove because he was the least-skilled in his

3

department. Nelson notified Laumeyer that his position was being eliminated in April 2003, and that he would be moved into production. Laumeyer asserts that Nelson told him that "[r]ather than getting rid of some of the younger people . . . he felt it would be better to keep the younger people and let the older people go." (Laumeyer Dep. at 105.) Further, Laumeyer contends that Nelson told him that he wanted "younger blood in the maintenance department." (*Id.*) Nelson denies having made any such age-related comments.

Laumeyer told Nelson that he (Laumeyer) could not perform the physical labor that is required of a production worker. Following his discussion with Nelson, Laumeyer told Gard that he could not perform the physical labor due to his physical restrictions from a degenerative lower backbone. Gard requested that Laumeyer obtain a medical update so that she could evaluate his current restrictions. The restrictions, dated April 24, 2003, stated that Laumeyer could stand, sit, or drive 8-10 hours a day; bend twist or kneel/squat 1-2 hours a day; lift or carry 0-24 pounds for 8-10 hours a day; lift or carry 25-50 pounds for 1-2 hours a day; and never lift more than 50 pounds. (Affidavit of Tracey Holmes Donesky ("Holmes Donesky Aff.") Ex. E at 5.) The restrictions also stated that Laumeyer could work more than ten hours per day and more than four days per week with these limitations in place. (*Id.*)

Laumeyer began working as a production worker in May 2003. However, because of his restrictions, Gard determined that he was unable to perform in his assigned position. Gard also determined that there were no open positions that could meet his current restrictions. As a result, Gard prepared a severance package for Laumeyer just two days after he started in the production position. On May 8, 2003, Laumeyer was terminated.

4

In September 2003, Laumeyer filed a workers compensation claim related to back injuries that he sustained at work in 1985, 1996, and 2003. Laumeyer filed this lawsuit on May 13, 2004, asserting claims under the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA") and also alleging age and disability discrimination under the Minnesota Human Rights Act ("MHRA").

## Discussion

**I.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set

forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

## II.     Disability Discrimination

The ADA protects any "qualified individual with a disability." *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003), *quoting* 42 U.S.C. § 12112(a). In order to establish a prima facie case of discrimination under the ADA, Laumeyer must show that: (1) he has a disability within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action because of the disability. *See Philip,* 328 F.3d at 1023; *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir. 1999). The employer must then rebut the presumption of discrimination "by articulating a legitimate, non-discriminatory reason for the adverse employment action." *Kiel*, 169 F.3d at 1135. If the employer does this, then "the burden of production shifts back to the plaintiff to demonstrate that the employer's non-discriminatory reason is pretextual." *Id.* The proof necessary for discrimination cases is flexible and varies with the specific facts of each case. *See Philip,* 328 F.3d at 1023.[1]

MDP asserts that Laumeyer's claims under the ADA and MHRA fail because Laumeyer has failed to establish a prima facie case of disability discrimination. Specifically, MDP contends that: (1) Laumeyer was not disabled within the meaning of the ADA; (2) even if Laumeyer was disabled, he was

---

[1] The MHRA parallels the ADA and thus Andresen's MHRA claim can be treated as co-extensive with her ADA claim. *See Fenney v. Dakota, Minn. & Eastern R.R. Co.*, 327 F.3d 707, 711 n.5. (8th Cir. 2003); *Roberts v. KinderCare Learning Ctrs., Inc.*, 86 F.3d 844, 846 n.2 (8th Cir. 1996).

not qualified to perform the essential functions of the production position; and (3) Laumeyer has offered no evidence that MDP's non-discriminatory reasons for terminating his employment were pretextual.

To be considered disabled under the ADA, a person must: (1) have a physical or mental impairment that substantially[2] limits one or more major life activities; (2) have a record of such impairment; or (3) be regarded as having such an impairment. 42 U.S.C. § 12102(2). A person is "substantially limited" by his or her impairment if the impairment "prevents or severely restricts" the individual's ability to perform a major life activity. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). Major life activities include speaking, hearing, learning, caring for oneself, performing manual tasks, walking, seeing, breathing, and working. 29 C.F.R. § 1630.2(i). The factors considered in determining whether a person is substantially limited in a major life activity include: (1) the nature and severity of the impairment; (2) the duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i-iii). Laumeyer asserts that his degenerative back condition constitutes a physical impairment that substantially and materially limits his major life activities of lifting, sitting, standing, and walking.

The Court finds that Laumeyer's condition is not sufficient to render him disabled under the ADA or MHRA. Laumeyer's back history spreads over the course of sixteen years of his employment

---

[2] Minnesota Statutes define a "disabled person" as "anyone who has a physical, sensory, or mental impairment which *materially* limits one or more major life activities." Minn. Stat. § 363A.03, subd. 12 (emphasis added). The Eighth Circuit has recognized that the MHRA has a "less stringent" standard than the ADA, but otherwise cases under the ADA and MHRA are reviewed under the same analysis. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004); *but see Weber v. Strippit, Inc.*, 186 F.3d 907, 912 n.4 (8th Cir. 1999) (finding that the difference between "materially" and "substantially" is "merely semantic" and treated as the same standard.)

with Kraft Foods and MDP.  The medical records demonstrate that through 2001, Laumeyer was put on sporadic restrictions based on his back condition.  Prior to his conversation with Gard in 2003 and the subsequent restrictions that were provided to MDP, the last restrictions on Laumeyer's work activities occurred in 2001 after Laumeyer suffered a back injury.  However, on July 30, 2001, Laumeyer's physician released Laumeyer to work, stating that "[a]fter 8/20/01, [Laumeyer] may work without restrictions."  (Holmes Donesky Aff., Ex. B.)  Although Laumeyer had a history of acute back injuries, none of his documented previous injuries and corresponding medical care resulted in ongoing work restrictions prior to his April 2003 visit to the doctor.  (*Id.*, Ex. L.)  The restrictions were put in place after temporary periods of back injury, but they were trumped by later doctors' notes that allowed Laumeyer to return to work unimpaired by restrictions.  These injuries are thus insufficient to render Laumeyer disabled under the ADA or MHRA.

Moreover, the April 24, 2003, restrictions do not demonstrate a substantial or material limitation on Laumeyer's ability to lift, stand, sit, or walk.  The lifting restrictions imposed on Laumeyer were insufficient to establish a qualifying disability.  *See Mellon v. Federal Express Corp.*, 239 F.3d 954, 957 (8th Cir. 2001) (holding that a 15-pound lifting restriction is insufficient to establish a disability).  Further, Laumeyer's conclusory assertions regarding the limitations on his other life activities are not sufficient to demonstrate that Laumeyer was substantially or materially limited in a major life activity.  Laumeyer was able to walk, stand, and sit up to 10 hours a day, and such a limitation falls short of a qualifying disability.

Laumeyer also has not shown that he had a "record of" a qualifying disability.  The evidence before the Court demonstrates that Laumeyer had a record of sporadic restrictions that did not impose

ongoing restrictions to Laumeyer's work. Such record is insufficient to support a "record of" claim. In addition, Laumeyer's "regarded as" claim fails. Laumeyer has not set forth any argument that he was "regarded as" disabled. Because Laumeyer has not established that he was disabled within the meaning of the MHRA and the ADA, Laumeyer's claims of disability discrimination fail.

Even if Laumeyer was disabled within the meaning of the MHRA and the ADA, Laumeyer has not established that he could perform the essential functions of his job with or without reasonable accommodation. 42 U.S.C. § 12111(8). Laumeyer stated that "there was no way" that he could perform the production job in May 2003. (Laumeyer Dep. at 126-27, 129.) He has not demonstrated that he suggested a reasonable accommodation or that a reasonable accommodation existed at the time that would have allowed him to perform the production position and thus rendered him a qualified individual. Nor has Laumeyer set forth any evidence of intentional discrimination. As such, Laumeyer's MHRA and ADA claims fail in these regards as well.

As a final matter, MDP has asserted that Laumeyer's disability on the MHRA claim fails because it is preempted by the Workers' Compensation claim that Laumeyer filed in September 2003. Because the Court has disposed of Laumeyer's disability claim on other grounds, the Court need not reach that issue.

### III.     Age Discrimination

The ADEA prohibits an employer from discriminating against an employee who is at or above the protected age of forty years because of the employee's age. *Stidham v. Minnesota Mining and Manufacturing, Inc.*, 399 F.3d 935, 938 (8th Cir. 2005) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). ADEA and MHRA claims of age discrimination are analyzed under the three-step analytical framework

of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-4 (1973); *Dietrich v. Canadian Pac. Ltd.*, 536 N.W.2d 319, 323 (Minn. 1995). First, in cases involving a reduction-in-force, the plaintiff must make a prima facie showing of age discrimination by establishing: (1) he is within the protected age group; (2) he met the applicable job qualifications; (3) he suffered an adverse employment action; and (4) there is some additional evidence that age was a factor in the employer's action. *Stidham* at 938 (citing *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994)). If plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate a legitimate non-discriminatory explanation for its conduct. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this burden, the burden shifts back to the plaintiff to establish that the employer's proffered reason was a pretext for discrimination. *Id*. at 804.

To support his ADEA claim, Laumeyer asserts three adverse employment actions taken by MDP: (1) MDP's termination of Laumeyer; (2) MDP not allowing Laumeyer to attend training sessions so that he could advance as a maintenance technician;[3] and (3) MDP's demotion of Laumeyer to a position where he would be paid less.

The Court finds that Laumeyer has established a prima facie case of age discrimination. MDP asserts that Laumeyer was not qualified for the position of maintenance technician because of Laumeyer's lifting restrictions; however, MDP was not given notice of the lifting restrictions until after Laumeyer's position as a maintenance technician was eliminated. Laumeyer asserts that Nelson, who

---

[3] Laumeyer concedes that his training-related claims are time-barred insofar as they constitute direct claims of discrimination. However, Laumeyer asserts that his contentions regarding denial of training constitute circumstantial evidence of his other age-related claims. The Court agrees.

was a decision-maker as to the restructuring that occurred in the department, told Laumeyer that "[r]ather than getting rid of some of the younger people . . . he felt it would be better to keep the younger people and let the older people go." (Laumeyer Dep. at 105.) Laumeyer's assertions are sufficient to establish the final prong of his prima facie case–that there is some additional evidence that age was a factor in the employer's action. Moreover, although MDP has set forth non-discriminatory reasons for its actions, genuine fact questions remain as to whether these reasons were pretextual. As such, MDP's motion for summary judgment on Laumeyer's age discrimination claims is denied.

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Defendant's Motion for Summary Judgment (Doc. No. 18) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

    a. Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims of disability discrimination. Accordingly, Counts III, IV, and V of the Complaint are **DISMISSED WITH PREJUDICE**.

    b. Defendant's Motion for Summary Judgment is **DENIED** as to Plaintiff's claims of age discrimination.

Dated: September 13, 2005           s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          Judge of United States District Court